IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 13-00270 |
| | ) |
| TONY WILLIAMS | ) |
|    a/k/a Levan D. Perryman, | ) |
| | ) |
|             Defendant. | ) |

## ORDER

This matter is before the court on the United States' motion to exclude witness report and testimony of Don Mikko (Doc. 61), Defendant's response in opposition (Doc. 73), and the United States' reply (Doc. 77). For the reasons explained below, the court finds that the United States' motion should be granted.

The United States moves to exclude the report and testimony of Don Mikko on the basis that it fails to satisfy the requirements of Federal Rules of Criminal Procedure 16, Local Rule 16.13, and Federal Rules of Evidence 702 and 403. Mr. Mikko's expert report, dated April 15, 2014, lists two exhibits: "1- Godbody Men's Denim Jacket" and "2- Time Men's Design Pants Made in Russia" and then states the following:

> FINDINGS:
> 1. Visual and microscopic examination of Exhibits 1 (jacket) and 2 (pants) disclosed no physical defects and/or characteristics of gunpowder and primer residues.

(Doc. 61-1, p. 1). The report contains no other findings or explanations.

Federal Rules of Criminal Procedure 16 states the following with regard to a

1

defendant's disclosure of expert witnesses:

> **Expert witnesses**.--The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
>> (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
>>
>> (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

FED. R. CIV. P. 16(b)(1)(C). Under Rule 16(b)(1)(C), "it is expected that the parties will make their requests and disclosures in a timely fashion." FED. R. CRIM. P. 16, Advisory Committee Notes, 1993 Amendments. The summary requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Id. The summary requirement applies to "not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." Id. If the defendant fails to comply with Rule 16(b)(1)(C), "the court may prohibit the [defendant] from introducing the undisclosed evidence." FED. R. CRIM. P. 16(d)(2)(C). "Relief for violations of discovery rules lies within the discretion of the trial court; a defendant must show prejudice to his substantial rights to warrant reversal of that discretion." United

States v. Petrie, 302 F.3d 1280, 1289 (11th Cir. 2002) (citations omitted).

Here, Mr. Mikko's report contains little to no information on the bases and reasons for his opinion. The expert report does not state how or when Mr. Mikko received the clothing and does not explain the procedures that were used to examine the articles of clothing. The report merely states that a "[v]isual and microscopic examination" of the two listed articles of clothing were performed. The instruments and techniques used are not disclosed. The United States asserts that if the Defendant's investigator, Dan Stankoski, obtained the clothing from the Defendant, then the United States needs Mr. Stankoski's report.

The United States reports that despite repeated requests for full disclosure, the defendant did not provide such information. A letter from defense counsel, dated May 27, 2014, stated that "[w]e have no further reciprocal discovery to disclose at this time." (Doc. 61-1, p. 2). However, defense counsel maintains that, despite the United State's accusation that he was "stone-walling," the United States did not request any additional information concerning this expert or his findings. (Doc. 73, p. 10). In fact, defense counsel reports that the previous prosecutor assigned to this case until May 13, 2014, indicated that she did not intend to contest the admission of this evidence. Id. Defendant reports that all of the requests by the United States were replied to by the deadlines requested by the United States. Id. In its reply, the United States submits that it has never conceded the admissibility of Mr. Mikko's opinions. The United States points out that, by letter dated May 28, 2014, it specifically requested any expert witness opinion from Stankoski and the

3

bases and reasons for those opinions pursuant to Rule 16(b)(1)(C) and asked that they be provided by May 30, 2014. (Doc. 77-2). In response to the request, defense counsel stated that Stankoski was not expected to offer opinion testimony within the scope of Rule 702. (Doc. 77-4).

Attached to Defendant's response to the instant motion, filed June 23, 2014, Defendant has now provided the report of Mr. Stankoski which confirms that he obtained the Defendant's clothing from the jail on March 31, 2014, (Doc. 73-1) and it was sent on April 2, 12014, by FedEx, and arrived at Mr. Mikko office on April 4, 2014 (Doc. 73-2). The court notes that the information from Stankoski does not contain any expert opinions. Defendant has also now provided an additional memorandum that describes the procedures used to examine the clothing. (Doc. 73-3). This additional memorandum is not dated or signed, but appears to be written by Mr. Mikko. According to the memorandum the clothing in question was examined as follows:

> I then placed both garments on clean brown wrapping paper and preserved in an orderly manner in an attempt not to lose any potential gunpowder residues. Using the Leica MZ95 stereo microscope, the Reichert Comparison Microscope and the China Full Spectrum Magnifier Clamp Lamp, I examined the entire contents of Exhibits 1 and 2. I did not find any apparent bullet holes or smokeless gunpowder residues in the form of burnt, unburnt or partially burnt. There was some soiled areas and possible yellow and white paint on the pants but no GSR. I checked the pockets as well. I then marked both items as evidence for FFTS as a form of identification. I also examined the brown wrapping paper that I used to place the garments on for any possible gunshot residues as well as an examination on the inside of the brown paper bag that the evidence was packaged and none were detected. No chemical tests were performed due to no apparent bullet holes and/or interpretable pattern. PPE was worn and procedures were followed in accordance with IAW AFTE and SWGGUN.

(Doc. 73-3, ¶ 5). The memorandum also includes a summary of the credentials of the author (presumably Mr. Mikko). (Doc. 73-3, ¶ 5). Defense counsel has also now proffered the following principles to which he reports Mr. Mikko can testify:

> 1. The small, round insert at the bottom of a cartridge casing is called the primer cap. It contains a paste or mixture of primer compound comprised in part of lead, barium, and antimony.
> 2. When a gun is discharged, the primer compound burns.
> 3. When the primer mix burns, it escapes from the gun in the form of a vapor or "plume" through any available openings in the weapon.
> 4. It then solidifies into fine particles and settles onto the hands, clothing, and surfaces in the immediate proximity of the discharged weapon.
> 5. The particulates vary in shape and size from submicron to over 100 microns (ìm).
> 6. Some of these particulates are unique to the process of firing a gun.
> 7. The presence or absence of these unique particulates is probative of whether a person has discharged or handled a firearm.
> 8. Many variables may affect the dispersion of the particulates.
> 9. Whether or not particulates are found on a person or his clothing cannot conclusively establish whether that person fired or handled a firearm.

(Doc. 73, p. 6). Defense counsel also states that Mr. Mikko will testify that the microscopic and stereoscopic examination he performed complied with requisite protocols and is widely accepted in the field of gunshot residue analysis. (Doc. 73, p. 7).

The United States asserts that even if it did not request the information, Defendant's duty to disclose reciprocal discovery was not triggered by a request from the United States. The United States argues that under the local rules, simply by accepting disclosure of discoverable information pursuant to Rule 16(a)(1)(E), the Defendant was automatically required to disclose all discoverable

information within the scope of Rule 16(b). Local Rule 16.13 requires the following:

> **Disclosure by the Defendant**. If defendant accepts or requests disclosure of discoverable information pursuant to Fed.R.Crim.P. 16(a)(1)(C), (D), or (E), defendant, on or before a date set by the Court shall provide to the government all discoverable information within the scope of Fed.R.Crim.P. 16(b).

Local Rule 16.13(b)(4). The deadline for reciprocal discovery in this case was extended to March 7, 2014, upon motion by the Defendant. (Doc. 20). Thus, regardless whether the United States requested the summary information for Mr. Mikko, since Defendant requested disclosure from the United States, Defendant was required to provide all Rule 16(b) information to the government by March 7, 2014. Pursuant to Rule 16(b), that information includes "a written summary of any testimony that the defendant intends to use under Rules 702." FED. R. CIV. P. 16(b)(1)(C). Defendant clearly did not timely provide the required summary, which under Rule 16(b) "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." FED. R. CIV. P. 16(b)(1)(C).

Additionally, the United States contends that, even with the new memorandum, Mr. Mikko's testimony also violates Federal Rule of Evidence 702. Rule 702 provides for the admission of expert testimony when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). The United States Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993) found that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable. "[A] district court judge is to act

as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." Dhillon v. Crown Controls Corporation, 269 F.3d 865, 869 (7th Cir. 2001); see also U.S. v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999). Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID 702. Accordingly, under Rule 702, "this Court has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts" Whatley v. Merit Distribution Services, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted). "[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." Allison v. McGhan Medical Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994)); see also Whatley, 166 F.Supp.2d at 1354 ("the proponent of the expert testimony has the burden to establish by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.")(citations omitted).

7

The United States asserts that if no chemicals are used to conduct the gunpowder residue examination, then a high-powered microscope is necessary to conduct scanning electron microscopy/energy dispersive x-ray spectrometry ("SEM/EDS"). See http://www.fbi.gov/stats-services/publications/law-enforcement-bulletin/may_2011/The%20Current%20Status%20of%20GSR%20Examinations. Mr. Mikko's memo reports that he followed the "IAW AFTE and SWGGUN" procedures. His memo does not explain what those initials stand for, and did not describe the specific standards or procedures that are associated with them. The court notes that AFTE is presumably the Association of Firearm and Toolmark Examiners and SWGGUN is the Scientific Working Group for Firearms and Toolmarks. These organizations concern the forensic science of firearm and toolmark identification. See United States v. Wrensford, 2014 WL 3715036, *3 n. 4 (D. Virgin Islands, July 28, 2014) ("Since the 1990s, the "FBI Laboratory has led the way in sponsoring Scientific Working Groups (SWG) to improve discipline practices and build consensus with our federal, state and local forensic community partners. Currently, the FBI Laboratory sponsors eight SWGs," one of which is SWGGUN, dedicated to firearms and toolmark analysis."). "Forensic toolmark identification is a discipline that is concerned with the matching of a toolmark to the specific tool that made it" such as when "the internal parts of a firearm make contact with the brass and lead [or other materials] that comprise ammunition." U.S. v. Otero, 849 F.Supp.2d 425, 427 (D.N.J. 2012) (citations omitted). Accordingly, it is unclear to this court whether these organizations even have standards for the analysis of

8

gunshot residue. The Scientific Working Group dedicated to developing guidelines for the analysis of gunshot residue is SWGGSR. According to the materials cited by the government, the Standard Guide for analyzing gunshot residue (ASTM 1588) uses an SEM/ EDS to view the residue particles. Mr. Mikko's memorandum states that he used a Leica MZ95 stereo microscope. No information on this instrument has been provided to the court and Defendant has not suggested or offered any information or explanation that would lead this court to believe that the microscope used was an SEM/EDS or that it was an equivalent instrument. Since Defendant has not professed that Mr. Mikko followed the SWGGSR standard guidelines or presented any authority showing that the procedures Mr. Mikko followed are reliable,[1] the court finds that his opinion testimony that there was no gunpowder residue on the clothing does not meet the requirements of Rule 702.[2]

---

[1] As previously noted, defense counsel has reported that Mr. Mikko will testify that the microscopic and stereoscopic examination he performed complied with requisite protocols and is widely accepted in the field of gunshot residue analysis. However, Defendant has offered no support for this statement.

[2] Since Defendant did not timely provide the information and has not shown it to be reliable, the court finds the testimony may also be excluded under Federal Rule of Evidence 403. Rule 403 provides additional discretion to exclude evidence that although relevant:
> its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence.

FED. R. EVID. 403.

## CONCLUSION

For the reasons explained above, the court finds that the motion of the United States to exclude the witness report and testimony of Don Mikko (Doc. 61) is **GRANTED**.

**DONE** and **ORDERED** this 2nd day of September, 2014.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE